UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14048-CR-CANNON/MAYNARD
CASE NO. 22-14054-CR-MARTINEZ/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DUSTIN SINGLETON,

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO COMPEL DISCOVERY

**THIS CAUSE IS** before me upon Defendant Dustin Singleton's Motion to Compel Discovery ("Motion") filed in two related cases and referred to me in one for a Report and Recommendation. DE 127-AMC; DE 131-AMC; DE 68-JEM.[1] The Motion seeks (1) to compel discovery from the Government of all photographs taken on the personal cellphones of Martin County Sheriff's Office ("MCSO") Detectives Tyler Ludlow ("Ludlow") and Garrett Lott ("Lott") during and after a traffic stop of Defendant on April 29, 2022; (2) a forensic extraction of the photographs from both personal cellphones; (3) a forensic analysis "by a neutral expert as to time taken for each photograph" on both personal cellphones and recovery of deleted photographs, if any; and (4) an *in camera* inspection of the photographs to determine which are relevant to the investigation in this case. DE 127-AMC at 1-2; DE 68-JEM at 1-2.

---

[1] This same Motion and all related briefing were filed in two separately pending but related cases. I am the paired U.S. Magistrate Judge in both cases. For ease of reference, citations to the case assigned to Judge Cannon, Case No. 22-14048-Cr-Cannon, will be "DE __-AMC," while citations to the case assigned to Judge Martinez, Case No. 22-14054-Cr-Martinez, will be "DE __-JEM."

The Government has responded in partial opposition, DE 138-AMC; DE 74-JEM, and Defendant has replied, DE 140-AMC; DE 76-JEM. The Government also filed a Court-ordered Supplemental Notice. DE 146-AMC; DE 84-JEM. On February 3, 2023, I held an evidentiary hearing on the Motion, after which I took the matter under advisement. This Report and Recommendation now follows.

## BACKGROUND

Defendant is charged in two separately pending criminal cases. The two cases relate in that both involve substantial evidence stemming from the same warrantless traffic stop of Defendant's car. Once guns and drugs were found in Defendant's car, law enforcement obtained a state search warrant for over a dozen electronic devices. In reviewing those devices, evidence of exploitation of minors was discovered. The Government then obtained approximately 16 federal search warrants, signed by me.

On August 25, 2022, a federal grand jury returned a three-count Indictment charging Defendant with possession with intent to distribute methamphetamine, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm and ammunition as a convicted felon. DE 3-JEM. On October 20, 2022, a federal grand jury returned a multi-count Second Superseding Indictment in a separate case charging Defendant and a co-defendant[2] with production and possession of visual depictions involving the sexual exploitation of minors. DE 39-AMC. The same CJA-appointed counsel, Mr. Edward Reagan, represents Defendant in both cases.

Defendant has filed virtually identical motions to suppress in each case challenging the warrantless traffic stop, as well as the subsequent state and federal warrants. DE 81-AMC; DE 35-JEM. After the motions were fully-briefed, I held an evidentiary hearing spanning eleven hours

---

[2] The sole co-Defendant, Elijah Shaw, has pled guilty as charged and is awaiting sentencing. DE 129-AMC; DE 148-AMC.

over two days. The issues are complex. One key focus of the hearing involved the review of photographs and bodycam video from around the time of the traffic stop on April 29, 2022. Lott and Ludlow, who conducted the traffic stop, testified extensively about the stop with reference to photographs taken during the stop and the subsequent search of Defendant's car.

Soon after the hearing ended, the Government discovered that additional photos existed on Ludlow's personal cellphone that had not been previously disclosed. This belated discovery generated a flurry of record activity and the instant Motion by Defendant seeking expedited relief, including a request for a forensic review of Lott and Ludlow's personal cellphones to see if other photos exist and a continued suppression hearing to address the newly disclosed evidence.

On January 27, 2023, I held a status conference, at which time the Government marked eleven new photographs for identification purposes and provided them to the Court. DE 134-AMC; DE 71-JEM.

On January 31, 2023, I issued an Order requiring the Government to file a supplemental notice attaching the Cellebrite extraction reports for Lott and Ludlow's personal cellphones. DE 141-AMC; DE 77-JEM. My Order further required the Government to explain Cellebrite reports generally and to describe the Cellebrite extraction reports generated in this case, including who performed them and how they relate to the late disclosed photographs. Moreover, recognizing "the general discord occasioned by the Government's belated disclosure of relevant photographs," I ordered the Government to file a precise timeline of events with reference to every photograph taken in relation to the traffic stop.

The Government's Supplemental Notice states as follows:

> The Cellebrite hardware and software are among the best known and most used mobile forensic extraction and analysis tools in the digital forensics industry. It is used by investigators in both the public and private sectors worldwide. Cellebrite extraction processes are

> generally accepted as a valid scientific process and a forensic tool in courts across the country. Cellebrite is a cellphone extraction technology widely used to extract and organize the contents of seized cellphones. Once the extraction process is complete, law enforcement uses Cellebrite technology to sort through the contents of a cellphone, in order to compile evidence. The extracted data is organized so it can be viewed and analyzed by investigators.

DE 146-AMC at 3; DE 84-JEM at 3. The Government further states that the Cellebrite reports of Lott and Ludlow's personal cellphones were generated by MCSO Detective Matthew Killough ("Killough"). Killough attached Lott and Ludlow's personal cellphones to a Universal Forensic Extraction Device ("UFED") to extract the information and then used Cellebrite's physical analyzer tool to generate the extraction reports. The reports cover a six and a half hour time period from 6:30 p.m. on April 29, 2022 to 1:00 a.m. on April 30, 2022. The reports are attached to the Supplemental Notice and have been provided to Defendant. DE 146-1-AMC; DE 146-2-AMC; DE 84-1-JEM; DE 84-2-JEM.

## ANALYSIS

Defendant moves to compel production of all photographs taken on Lott and Ludlow's personal cellphones relating to this case, and for a forensic examination and *in camera* inspection of both cellphones. The Government agrees that Defendant is entitled to all relevant photographs on the cellphones and represents that such photographs have been provided. As discussed above, the Government also obtained and produced Cellebrite extraction reports for both cellphones covering the relevant timeframe. The Government does not object to the suppression hearing being reopened. The Government objects, however, to producing the cellphones for further forensic or *in camera* inspection.

Federal Rule of Criminal Procedure 16 governs pretrial criminal discovery and "spells out the materials the prosecution must produce on the defendant's request." *U.S. v. Jordan*, 316 F.3d

4

1215, 1249 (11th Cir. 2003). Rule 16 requires the Government to disclose an array of tangible objects—including photographs within the Government's possession, custody, or control—if such requested items are material to the preparation of the defense; are intended for use by the Government as evidence in chief at the trial; or were obtained from or belong to Defendant. Fed. R. Crim. P. 16(a)(1)(E). The disclosure requirement is not necessarily limited to preparation for trial defenses. *See U.S. v. Soto-Zuniga*, 837 F.3d 992 (9th Cir. 2016) ("Rule 16(a)(1)(E) permits discovery to determine whether evidence in a particular case was obtained in violation of the Constitution and was thus admissible").

In addition to the Government's discovery obligations under Rule 16, due process requires the Government to disclose information that is favorable to Defendant and material either to guilt or punishment. *Brady v. Maryland*, 83 S. Ct. 1194 (1963). Under *Brady*, the Government must disclose any information in the Government's knowing possession that is material to exculpating Defendant. *U.S. v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999) ("The prosecution must only reveal information that it had in its possession or knowledge – whether actual or constructive."). Knowledge or possession by the prosecutor "includes materials in the hands of a governmental investigatory agency closely connected to the prosecutor." *Jordan*, 316 F.3d at 1249.

In *Giglio v. U.S.*, 405 U.S. 150 (1972), the Supreme Court extended *Brady* to disclosure of impeachment material. *See Jordan*, 316 F.3d at 1253. Under *Giglio*, "'w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility" justifies a new trial. *Giglio*, 405 U.S. at 153-54. The difference between *Brady* material and *Giglio* material is that *Brady* information is exculpatory, meaning it "relates to evidence which directly tends to lessen a defendant's guilt," while *Giglio* material is impeaching, meaning that it relates to "*witness credibility* type evidence of a *collateral* nature… indirectly

5

making it less likely that the defendant is guilty." *U.S. v. Hopkins*, 2008 WL 4453583, at *2 (E.D. Cal. Oct. 3, 2008) (emphasis in original).[3]

Here, it is undisputed that Defendant is entitled to all photographs on Lott and Ludlow's personal cellphones relating to the case pursuant to Rule 16. It is further undisputed that the late-disclosed photographs taken by Ludlow on his personal cellphone are material to issues raised during the suppression hearing and should have been provided to defense counsel beforehand. The Government represents that all photographs have now been provided. This statement is consistent with my review of the Cellebrite reports, which contain thumbnail images of all photographs during the relevant timeframe on both personal cellphones. The thumbnail images on Ludlow's phone appear to depict the photographs that have now been admitted into evidence as Government Exhibits. DE 134-AMC (GX10A-10K); DE 71-JEM (GX10A-10K). Similarly, the thumbnail images on Lott's phone appear to depict photographs admitted into evidence at the suppression hearing and other photographs that appear related to the case but not necessarily material to the suppression issue before me. I thus find that the Motion's request to compel all relevant photographs on the two personal cellphones is now moot. If defense counsel's review of the images on the Cellebrite report show photographs not yet received in discovery, Defendant may file an appropriate renewed motion to compel referencing the specific images at issue.

Regarding Defendant's remaining requests for relief, I recommend that they be denied for several reasons.

---

[3] While some courts extend *Brady* to evidence that is material to suppression, *see, e.g.*, *U.S. v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000); *Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990), *vacated on other grounds*, 503 U.S. 930 (1992), whether *Brady's* disclosure requirements apply at the motion to suppress stage is an open question, *see, e.g.*, *U.S. v. Lee Vang Lor*, 706 F.3d 1252, 1256 n. 2 (10th Cir. 2013); *see also U.S. v. Stott*, 245 F.3d 890, 902 (7th Cir. 2001) (discussing a circuit split on the issue). Even if *Brady* does not squarely apply to the issue of the belated disclosure of the photographs, conflicts in Ludlow's testimony at the suppression hearing on January 23, 2023 implicate his credibility, so I am mindful of the Government's obligations under Rule 16, *Brady*, and *Giglio* as I conduct this analysis.

First, there is no issue regarding any late disclosure of photographs from Lott's cellphone. All photographs on Lott's personal cellphone were uploaded into evidence and turned over to the defense prior to the suppression hearing. Lott testified during the suppression hearing that he took the photographs on his personal cellphone using the "Axon" application and software. The photographs on the Cellebrite report of Lott's phone appear to be consistent with the evidence disclosed to the defense. Thus, I find no valid reason to require any further forensic or *in camera* review relating to Lott's personal cellphone.

Second, by generating and producing the Cellebrite extraction reports for both cellphones in issue, the Government has essentially provided Defendant with the relief sought. The Cellebrite reports show the images currently stored on the two personal cellphones that were generated during the time period covering 6:30 p.m. on April 29, 2022 to 1:00 a.m. on April 30, 2022. I recognize that Defendant asks for a marginally different time period—from 6:39 p.m. on April 29, 2022 to 1:22 a.m. on April 30, 2022—however, Defendant has made no showing that the additional 22 minutes of time is material or particularly relevant to the timeframe of the traffic stop. Notably, the Cellebrite extraction reports also show text messages related to the traffic stop that were sent or received by Lott, Ludlow and other law enforcement officers during this timeframe. In addition, the "Capture Time" listed in the "Meta Data" section for each photograph on the extraction report indicates when a particular photograph was taken. The column labeled "Deleted" show no images were deleted during the time frame in question.

The absence of any sign of deleted images is a key distinction from the civil case of *Measured Wealth Priv. Client Grp., LLC v. Foster*, No. 20-80148-Civ-Singhal/Matthewman, 2021 WL 309033, (S.D. Fla. Jan. 29, 2021)—upon which Defendant relies. In *Measured Wealth*, the court compelled a carefully crafted forensic examination of a party's personal cellphone where

that party admittedly deleted relevant text messages and was "haphazard and incomplete with regard to his production of text messages and iMessages during the discovery process." *Id.* at *1. Here, by contrast, there is no evidence of intentional haphazardness or deletion of relevant images.

This case is also distinguishable from *State v. Ortiz*, 146 N.M. 873 (N.M. App. Ct. 2009)—cited by defense. In *Ortiz*, a state court defendant charged with DWI sought to prove that the stop of his car was pretextual. The trial court ordered the State to turn over a police officer's personal cellphone records for a specified time frame (approximately six minutes) that were found "relevant" to the defendant's theory that the DWI stop was pretextual. *Id.* at 877-78. The trial court allowed the State to review the records in advance of production and to seek a protective order if the records were irrelevant or implicated confidentiality concerns. *Id.* at 881. After the State refused to comply with the trial court's order, the trial court found the State's actions "in bad faith, arguably intentionally preventing the trial from going forward[,]" and dismissed the charges against the defendant. *Id.* at 882. This decision was affirmed on appeal.

Notably, the trial court in *Ortiz* never ordered the State to produce the officer's personal cellphone for an independent forensic exanimation or *in camera* inspection. Rather, the trial court ordered the State to produce the officer's personal cellphone records for approximately six minutes of time. Here, the Government has voluntarily provided Defendant and his counsel with Cellebrite extraction reports for both Lott and Ludlow covering the relevant timeframe.

As for Defendant's request that the forensic analysis be conducted by a "neutral expert," I have no reason to believe that the Cellebrite extraction reports generated by Killough on the two cellphones are inaccurate. Upon careful review of the reports, I am satisfied that they are accurate. Defendant's conclusory arguments do not show otherwise.

Third, I find Ludlow's testimony about why the photographs on his personal cellphone were turned over late to be credible. I ordered an evidentiary hearing for the express purpose of resolving a key dispute in the briefing between Defendant's assertion that Ludlow "made either an unreasonable *mistake of fact* or committed an intentional act which he sought to correct only later," DE 140-AMC at 5; DE 76-JEM at 5 (emphasis in original), and the Government's competing assertion that Ludlow's late disclosure of relevant photographs was a reasonable, non-nefarious "mistake." DE 138-AMC at 10; DE 74-JEM at 10. "The longstanding and repeated invocations in caselaw of the need of district courts to hear live testimony so as to further the accuracy and integrity of the factfinding process are not mere platitudes. Rather, live testimony is the bedrock of the search for truth in our judicial system." *U.S. v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012). "[J]udges simply cannot decide whether a witness is telling the truth on the basis of a paper record and must observe the witnesses' demeanor to best ascertain their veracity – or lack thereof." *Oshodi v. Holder*, 729 F.3d 883, 892 (9th Cir. 2013); *see also U.S. v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995) ("There can be no doubt that seeing a witness testify live assists the finder of fact in evaluating the witness's credibility."); *Brown v. Shalala*, 44 F.3d 931, 936 (11th Cir. 1995) ("[T]he value of live testimony, where demeanor can be considered and credibility more readily evaluated, cannot be discounted."); *Aetna Life Ins. Co. v. Richardson*, 140 F. App'x 853 (11th Cir. 2005) ("Indeed, a function of the district court is to make factual determinations after assessing the demeanor and credibility of witnesses.").

During the hearing on the motion to compel, I had the opportunity to listen to Ludlow's explanation of the late disclosure, to observe and evaluate his demeanor while testifying, and to weigh his credibility. Having done so, I find Ludlow's explanation about why he disclosed the photographs on his personal cellphone late to be entirely credible and consistent with his prior

testimony at the suppression hearing that he "believed" photos existed showing the location of the pill bottle as he first found it on the right rear floorboard of Defendant's car.

Specifically, at the suppression hearing, Ludlow testified that he entered Defendant's car to retrieve two weapons – a knife and brass knuckles. DE 132-AMC at 127. Ludlow testified that when he entered the "rear passenger compartment area" of the car to retrieve the knife, he observed the knife, a "glass jar with assorted different colored pills[,]" and a "toiletry bag" "that also had some marijuana in it" in plain view. DE 132-AMC at 122-23, 130, 178-81. Photographs of the knife, glass jar with assorted pills, and marijuana were all admitted as evidence at the suppression hearing. DE 124-AMC (Exs. GX2, GX4, GX8); DE 65-JEM (Exs. GX2, GX4, GX8.). Ludlow acknowledged that he did not seize the knife the night of the traffic stop, and that another officer had to retrieve the knife from the car at an impound lot, about a week later. DE 132-AMC at 129-30, 161.

Of the photos from the scene shown to Ludlow on the stand during the suppression hearing, Ludlow testified: "I believe Sergeant Lott took those photos." DE 132-AMC at 135, 161. Ludlow further testified as follows on cross-examination:

> Q. Where did you put [the large knife?]
> A. Initially on the roof and then put it back in the car.
> Q. Why did you put it on the roof? So that I could get it out of the car initially, and then we were going to shut the car and kind of go on about the rest of the traffic stop and verify the information. It ended up back in the car because there were a lot of things going on, a lot of items.
> …
> Q. So, this weapon that you put on top of the car, is there any photos of it?
> A. No sir.
> Q. How about the glass jar, are there any photos of the glass jar at the scene?
> A. **I believe so**.
> Q. The glass jar at the department, but I am trying to see where you found it.

>    A. On the rear passenger side floorboard.
>    Q. Well I mean you obviously had a cell phone there that was able to take pictures, because Lott was taking pictures everywhere, correct?
>    A. Yes sir.
>    Q. No pictures of the knife in the car or on top of the car, in fact you didn't even take the knife that night, it was seven days later you got it, right?
>    A. Yes sir.

DE 132-AMC at 160-61 (emphasis added).

Ludlow's suppression hearing testimony about there being no photos of the knife is consistent with the later Cellebrite report showing no photos of the knife on Ludlow's cellphone. Moreover, Ludlow's suppression hearing testimony that he "believed" there were photos of the glass jar at the scene is consistent with his later motion hearing testimony that he had a memory of photographs of the glass jar at the scene based upon his recent response to a Public Records request "about a week" before he testified at the suppression hearing. At the later motion hearing, Ludlow credibly testified that in looking through his phone to respond to the public records request, he noticed the photos but (mistakenly) thought they were duplicates of what Lott had already submitted. In Ludlow's own words, "Sergeant Lott was the one handling the photos, simply put. So I didn't think I had any photos to submit."

Ludlow also credibly testified that he did not intend to hide the photographs. This testimony is supported by his actions taken to address the situation. Ludlow immediately contacted Agent Urgo upon realizing he had photographs from the scene that had not been shown to him at the stand during the suppression hearing. In turn, Agent Urgo notified the prosecutors who immediately notified defense counsel and the Court. Ludlow testified under oath that he "realized I had made a mistake and the photos that I had should have been submitted, and they were not, and I wanted to rectify it immediately." He and Lott voluntarily submitted their personal cellphones for a forensic extraction which served as the foundation for the Cellebrite reports which have now

11

been provided. At the later motion hearing, Ludlow testified that he turned over his personal cellphone because he "wanted to do the right thing and, like I said, rectify the situation and get all the photos and any documentation pertinent to the case just out in the air."

Overall, having carefully considered Ludlow's testimony, I find such testimony credible. This credible testimony establishes that Ludlow made an honest and inadvertent mistake. I do not find any evidence of intentional bad faith or nefarious intent. In making these findings, I acknowledge that bad faith is not necessary to support a discovery violation. *See U.S. v. Camargo-Vergara*, 57 F.3d 993 (11th Cir. 1995). Inadvertence does not render a discovery violation harmless; rather Rule 16's purpose is to protect Defendant's right to a fair trial rather than to punish the Government's non-compliance. *See U.S. v. Noe*, 821 F.2d 604, 607 (11th Cir. 1987). Here, consistent with the purpose and spirit of Rule 16, I find that Defendant's fundamental right to fair criminal proceedings has been safeguarded and protected by the actions that have been taken to cure the inadvertent mistake. Albeit late, the photographs at issue have now been disclosed. In addition, detailed Cellebrite reports pertaining to the two cellphones during the relevant timeframe have also been produced.

Fourth and finally, the Government's late disclosure can be remedied by more narrowly tailored, less intrusive measures. These measures include (1) producing the photographs in issue (done); (2) producing Cellebrite reports (done); and (3) giving Defendant and his counsel additional time to review the recently provided photographs, determine how they relate to the overall defense theory of the case, and then decide if Defendant wishes to pursue his request to reopen the suppression hearing. To address this third remedial measure, I recommend that the current trial settings in each case be continued for a period of 30 to 45 days in order to allow sufficient time for Defendant to adequately consider the newly disclosed photographs together

with all of the related reports and briefing. This additional time will also allow time for a continued suppression hearing, if necessary.

In sum, I find that while the defense and Court were surprised by the belated disclosure of additional relevant photographs, this surprise can be remedied by providing Defendant a full and fair opportunity to prepare his defense strategy in light of the newly disclosed photographs. Now that these photographs and related Cellebrite reports have been disclosed, and with the recommended brief extension of time in place, the Government's discovery violation cannot be found to substantially prejudice Defendant's ability to adequately prepare his defense for trial. *Cf. U.S. v. Noe*, 821 F.2d 604, 607 (nondisclosure of a tape recording was reversible error because it "attacked the very foundation of the defense strategy"); *U.S. v. Rodriguez*, 799 F.2d 649, 654 (11th Cir. 1986) (Nondisclosure of documents was reversible error because the defendant did not have the opportunity to prepare to meet the evidence).

## **RECOMMENDATION**

Based on the foregoing, I respectfully recommend that Defendant's Motion to Compel, DE 127-AMC; DE 68-JEM, be **DENIED** consistent with the findings in this Report. That is, Defendant's request to compel the production of all photographs taken on Lott and Ludlow's personal cellphones relating to the April 29, 2022 traffic stop is now moot given the Government's voluntary disclosure of the photographs and accompanying Cellebrite reports. Defendant's request for any further forensic analysis or *in camera* review of the cellphones should be denied as both unnecessary and unwarranted. Under the circumstances, I recommend that the current trial settings in each case be extended for a period of 30 to 45 days to afford Defendant a full and fair opportunity to take any actions deemed necessary to prepare his defense to the charges pending against him in light of the newly disclosed photographs.

## NOTICE OF RIGHT TO OBJECT
## AND SHORTENED OBJECTIONS PERIOD

In light of the swiftly approaching trial date and in the interest of furthering the important goal of the speedy administration of criminal justice, I find that a prompt resolution of this referred Motion is required. As such, I find it necessary and appropriate to shorten the time for any objections pursuant to Southern District of Florida Magistrate Judge Rule 4(a). Accordingly, the parties shall have **FIVE (5) DAYS** from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Aileen M. Cannon in Case No. 22-14048-Cr-Cannon and with U.S. District Judge Jose E. Martinez in Case No. 22-14054-Cr-Martinez. *See* 28 U.S.C. § 636(b)(1)(C); S.D. Fla. Mag. J. R. 4(a). Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within THREE (3) DAYS of the date of this Report and Recommendation.**

    **DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 13th day of February, 2023.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE